Lori CORNELIUS, by Next Friend,
Elmer Cornelius, Respondent,

v.

Wayne Frederick SHIELDS, Appellant.

No. 49436.

Supreme Court of Missouri,

Division No. 2.

July 8, 1963.

Buehner & Thomas, Joplin, for appellant.

Gerald H. Lowther and James K. Prewitt, Miller, Fairman, Sanford, Carr & Lowther, Springfield, for respondent.

BOHLING, Commissioner.

Lori Cornelius, by her next friend, Elmer Cornelius, her father, secured a $25,000.00 judgment against Wayne F. Shields for personal injuries sustained when struck by his automobile. We refer to Lori as plaintiff. Defendant has appealed, contending that the refusal of instruction No. 7, tendered by him, was reversible error. There is no contention that plaintiff did not make a case on the submitted issues; that is, that defendant negligently failed to keep a proper lookout, or negligently failed to stop or swerve his automobile and avoid striking plaintiff.

Plaintiff was injured between 5:00 and 5:30 p. m. Sunday, August 21, 1960. Mr. Cornelius, with his family, stopped at the

P. C. Carlock fruit farm about 2½ miles northeast of Greenfield, Missouri, on the north side of Highway H. Highway H is an east-west road in front of and is straight for ⅛ of a mile on each side of the Carlock residence. The blacktop pavement is 19, the south shoulder is 4, and the north shoulder is 6 feet wide. The land is practically level with a small dip or ditch for drainage north of the highway and west of the Carlock driveway. Mr. Cornelius was driving a Ford automobile, about 17 feet long. He parked the car about four feet west of a large tree west of the Carlock driveway, with its front end about even with the tree. Testimony put this tree 36 feet north of the pavement by measurement. Mr. Cornelius walked north to talk to Mr. Carlock. Plaintiff, 2 years and 20 days old, went with him. Mrs. Cornelius was seated on the front seat, and Carlene, about 13, John, about 12, and Dale, about 9, were on the rear seat. Plaintiff, who had an ice cream cone, soon returned to the west side of the Cornelius car. When plaintiff failed to come around to the east side, Mrs. Cornelius looked to see if she was getting in the west side of the car and, looking through the rear glass, saw her standing in the middle of the pavement as if headed south across the road. She did not know whether plaintiff walked or ran out onto the road. Mrs. Cornelius heard a westbound car approaching. It was about 170 or 200 feet east of plaintiff. She placed defendant's speed at 50 to 60 miles an hour, testifying defendant's car struck plaintiff within three or four seconds. There was testimony that defendant did not slacken speed, swerve or sound his horn, and plaintiff was knocked through the air. Carlene testified she saw plaintiff two or three feet north of the pavement. She then saw a westbound car coming around a curve. She looked again and plaintiff was standing in the middle of the road. Plaintiff's ice cream cone was on the highway after she was struck. There were 30 feet of skid marks east of where it lay and plaintiff lay 39 feet west of the ice cream cone.

The evidence for plaintiff was that a westbound motorist had a clear view of 20 or more feet north of the pavement when 200 feet east of where plaintiff was struck, that at the speed defendant was traveling he could stop in 59 feet plus reaction time, which was established at ¾ths of a second.

Defendant and his wife were en route in his 1957 Renault automobile from Greenfield to their home in Springfield. The car was 5 feet wide and in good mechanical condition. They placed defendant's speed at 35 to 40 m. p. h. Defendant first saw plaintiff at the instant his wife screamed. Plaintiff was then at the edge, not more than a foot north, of the pavement, and defendant was 40 to 45 feet east of her. She was running southwesterly across the highway. She was west of the Cornelius car, which was west of the large tree west of the Carlock driveway. Defendant's judgment was that the rear of this car was 5 or 6 feet north of the edge of the pavement. Defendant's wife screamed when she first saw plaintiff, at the edge of the pavement and running into the road. Defendant pushed down on his foot pedal as hard as he could, but it "wasn't hard enough," and his automobile, between its center and left headlight, struck plaintiff while traveling 10 to 15 m. p. h. His car laid skid marks 59½ feet long, starting near the center of the westbound lane and veering slightly to the right. It was completely on the highway when he stopped. He stated there was nothing to keep him from seeing plaintiff while she was on the north shoulder of the highway. He could not say he saw her while she was in the yard. Plaintiff was not plummeted through the air, but when the Renault was stopped she was thrown forward and rolled on the pavement for about 5 or 10 feet in front of his car.

Defendant testified he made no attempt to swerve his automobile or sound its horn.

As stated, plaintiff submitted her case in the disjunctive, predicating a verdict on findings that defendant was negligent in not keeping a proper lookout and discovering plaintiff's presence on or near said highway

in time to have prevented his automobile from striking plaintiff, or in failing to stop or swerve his automobile when he should have seen plaintiff on or closely approaching said highway and should have known a collision with her was imminent unless he so stopped or swerved his automobile.

Defendant's refused instruction No. 7, omitting submissions not pertinent here, was to the following effect. It submitted findings that the defendant was westbound "along the right side of Highway 'H' at a speed of 35 to 40 miles per hour and that when defendant's car was approximately 40 feet east of the plaintiff, plaintiff suddenly ran out * * * from behind the car in evidence *that was parked with its rear end five or six feet north of the north edge of Highway 'H'* and directly into the path of the defendant's approaching automobile; and * * * that as the plaintiff *did so run out* the automobile of defendant was then so close to plaintiff that in the exercise of the highest degree of care defendant could not have avoided the collision by stopping said automobile, or sounding its horn, or swerving same, * * * and * * * that at all times prior to and during the occurrence mentioned in evidence that the defendant * * * exercised the highest degree of care in the manner in which he operated his said automobile, then * * * your verdict should be in favor of the defendant, Wayne Shields." (Emphasis added.)

█ Instruction No. 7 predicated a defendant's verdict on the whole case upon a finding of certain facts, but omitted submitting other facts controverting one of the charges of negligence factually submitted in plaintiff's instruction; that is, that defendant negligently failed to maintain a proper lookout to discover the presence of plaintiff in time to have avoided striking her. A number of witnesses, including defendant, testified that there were no obstructions on the north shoulder of the highway to keep a westbound motorist from seeing plaintiff. A converse verdict-direct-

ing factual instruction must require a finding on all charges of negligence submitted for recovery. Martin v. Lingle Refrigeration Co., Mo., 260 S.W.2d 562, 566 [2]; Fellman v. St. Joseph L. & P. Co., Mo., 334 S.W.2d 60 [1]. Scott v. Nash, Mo.App., 355 S.W.2d 626, 633 [6], states: "[O]ne may not, under the guise of a converse instruction, direct a verdict upon a finding in respect to one particular issue and in so doing exclude all other factual issues upon which a verdict might be returned * * *, or pick up and eliminate an essential element by means of a 'catchall' phrase." See also Martin case, supra; Rohde v. St. Louis Pub. Serv. Co., Mo., 249 S.W.2d 417, 421 [4]. Under the foregoing authorities requested instruction 7 was misleading and confusing.

█ The submitted finding "that when defendant's car was approximately 40 feet east of the plaintiff, plaintiff suddenly ran out * * * from behind the car in evidence *that was parked with its rear end five or six feet north of the north edge of Highway 'H'* and directly into the path of the defendant's approaching automobile; and * * * that as the plaintiff *did so run out* * * *" assumes material controverted facts without submitting said facts for the jurors' determination. (Emphasis added.)

Defendant testified that in his "judgment" an automobile (the Cornelius car) was parked "five or six foot" north of the edge of the pavement. Six witnesses, including disinterested parties, gave testimony to the effect the rear of the Cornelius car was between 15 and 20 feet north of the edge of the pavement. The instruction assumes the controverted fact that the rear end of the parked car was "five or six feet" north of the pavement, without submitting that fact issue to the jury, and was properly refused. Watt v. St. Louis Pub. Serv. Co., Mo., 354 S.W.2d 889, 892 [6]; Trautloff v. Dannen Mills, Inc., Mo.App., 316 S.W.2d 866, 873 [7]; George v. Allen, 362 Mo. 971, 245 S.W.2d 848, 850 [3, 4].

No witness testified that plaintiff "suddenly ran out * * * from behind" any car. The evidence favorable to defendant is that she was running when first seen by defendant's wife at the edge of the pavement and by defendant when one foot north of the pavement. Payne v. Scott, Mo.App., 181 S.W.2d 161, 164 [11].

Plaintiff advances additional reasons for sustaining the trial court's refusal of instruction No. 7. This appeal is sufficiently disposed of on the issues discussed.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All of the Judges concur.