**D. C. TRANSIT SYSTEM, INC.,**
a corporation, Appellant,

v.

**Narsis CARNEY, Appellee.**

No. 4504.

District of Columbia Court of Appeals.

Submitted April 1, 1969.

Decided June 16, 1969.

Wilmer S. Schantz, Jr., Washington, D. C., for appellant. Morton Berg, Wash-

ington, D. C., also entered an appearance for appellant.

Edward C. O'Connell and Louis M. Kaplan, Washington, D. C., for appellee.

Before KELLY, FICKLING and KERN, Associate Judges.

FICKLING, Associate Judge.

Appellant's motion for a directed verdict was denied, and the jury awarded appellee damages in the sum of $7,500 for injuries sustained while a passenger on a bus. Its motion for judgment n. o. v. was also denied and this appeal followed.

The facts are relatively simple and undisputed. Appellee boarded one of appellant's buses near the corner of 13th and Eye Streets, N.W. The bus pulled away from the bus stop and had just entered the intersection when an unidentified car, which had been traveling in the same direction as the bus, suddenly made a right turn in front of the bus. The bus driver applied the brakes, and the bus came to a sudden stop causing appellee, who had not had time to sit down, to fall and injure herself.

The uncontroverted testimony of the bus driver was that he noticed the car when it was 20 to 25 feet to the rear of the bus. At that time the car was in the third lane from the curb and, although it was moving at a high rate of speed, he did not feel that it represented any danger to the bus. He took his eyes off the car for a second or two to check the traffic light and traffic conditions and did not see the car again until it cut in front of the bus. The driver of the car gave no indication he was turning, neither by signaling nor blowing his horn to alert the bus driver.

Witnesses agreed that the bus was moving very slowly (from 3 to 5 m. p. h.) and had gone only a short distance (from 4 to 20 feet) when the bus came to a sudden stop, and that the bus would have hit the car had the bus driver not reacted as he did. The car passed 4 to 5 feet in front of the bus.

The law is clear that a common carrier is held to a duty of care commensurate with the particular hazards involved, i. e., all the care and caution which a bus driver of reasonable skill, foresight, and prudence could be fairly expected to exercise.[1] Although Cole and Lindsey, *supra* n. 1, speak of a common carrier as being held to the "highest degree of care," there are no categories of care, i. e., the care required is always reasonable care. What is reasonable depends upon the dangerousness of the activity involved. The greater the danger, the greater the care which must be exercised. Becker v. Colonial Parking, Inc., D.C.Cir., 409 F.2d 1130 (decided January 27, 1969) and cases cited therein at n. 20. However, a common carrier is not an insurer of the safety of its passengers. There must be some evidence from which the jury could find or infer that the bus driver was negligent before appellant can be held liable for appellee's injuries. D. C. Transit System, Inc. v. Smith, D.C.Mun. App., 173 A.2d 216 (1961).

There is no doubt that the sudden stop was necessitated by an emergency situation created by the car's right turn into the path of the bus. Nor is there any doubt that the bus driver took the only action possible when confronted with this situation.[2] His prompt action avoided a certain collision which may have seriously endangered the lives of his passengers and the driver of the car. The testimony af-

---

1. Cf. Cole v. Capital Transit Co., 90 U.S. App.D.C. 289, 195 F.2d 568 (1952); Lindsey v. D. C. Transit Co., D.C.Mun. App., 140 A.2d 306 (1958).

2. See, e. g., Robinson v. Connecticut Co., 122 Conn. 300, 189 A. 453 (1936); Mai-

wald v. Public Serv. Co. of N. H., 93 N.H. 276, 41 A.2d 247 (1945); Hoffman v. Lehman, 286 App.Div. 487, 145 N.Y.S.2d 105 (1955), aff'd, 2 N.Y.2d 824, 159 N.Y.S.2d 839, 140 N.E.2d 749 (1957).

fords no support for appellee's contention that the bus driver should have slowed down sooner.

 Since the emergency stop was necessary, the question then arises as to how the bus driver became involved in that situation. If it was created partially by the negligence of the bus driver, then appellant would be liable. Cole, *supra; Lindsey, supra.*

 Appellee contends that the bus driver was negligent in failing to give full time and attention and in failing to keep a proper lookout. According to appellee the bus driver should have continued to observe the car and, had he done so, he would have seen the car move from the third lane from the curb to the lane next to the one in which the bus was traveling. Thus he would have been alerted to the possibility that the car *might* turn in front of the bus, and the bus driver could have avoided an emergency by waiting a few more seconds at the curb before starting up.

Appellee's theory ignores the realities of the situation.[3] When the bus driver noticed the car, it was in the third lane of traffic only 20 to 25 feet from the bus. He certainly had the right to assume that the driver would obey traffic regulations and would not cut across two lanes of traffic within 25 or 30 feet of the intersection to make a right turn.[4] The car's driver did not signal or give any indication he was turning. The bus driver then looked for a second or two at the traffic light, which he had a duty to do, saw that he had a green light and a clear intersection and then proceeded into it.

If we accept appellee's theory of the case, we would, in effect, "make the carrier the absolute insurer of its passengers against any and all illegal conduct of other motorists, and require their drivers to be endowed with supernatural power to discern when and how every other motorist will violate traffic laws, notwithstanding every fact and circumstance would justify no such conclusion." *Alphonse, supra* n. 4 at 612.

In the instant case, the bus driver was confronted with an emergency situation which he could not have reasonably anticipated and for which he was not responsible.[5] The record fails to show any basis upon which the jury could find or infer negligence on the part of appellant and, therefore, its motion for judgment n. o. v. should have been granted.

Reversed.

---

3. A similar theory was specifically rejected in Stine v. Springfield City Lines, Inc., 106 Ohio App. 429, 155 N.E.2d 245 (1958).

4. Sher v. DeHaven, 91 U.S.App.D.C. 257, 199 F.2d 777, 36 A.L.R.2d 937 (1952); Alphonse v. New Orleans Pub. Serv.,

Inc., 138 So.2d 610 (La.App.1962); Stine, *supra* n. 3.

5. See, e. g., Robinson, *supra* n. 2; Alphonse, *supra* n. 4; Lukitsch v. St. Louis Pub. Serv. Co., 362 Mo. 1071, 246 S.W. 2d 749 (1952); Maiwald, *supra* n. 2; Hoffman, *supra* n. 2; Stine, *supra* n. 3.